Patricia H. HIEGEL, Petitioner-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Servomation Corporation, Co-Appellants.†

Court of Appeals

*No. 84–125. Submitted on briefs September 17, 1984.—Decided October 19, 1984.*
(Also reported in 359 N.W.2d 405.)

† Petition to review denied.

206

For the co-appellant the cause was submitted on the briefs of *Taft, Stettinius & Hollister*, with *Wilbur L. Collins* and *Mark E. Lutz* of counsel, of Cincinnati, Ohio, and *Quarles & Brady*, with *David B. Kern* of counsel, of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *Gray & End*, with *J. Michael End* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J. The Labor and Industry Review Commission (LIRC) and Servomation Corporation (Servomation) appeal from an order remanding the sex discrimination claim of Patricia H. Hiegel (Hiegel) to LIRC for a supplemental hearing. LIRC did not file a brief on this appeal. Servomation raises three issues on appeal, of which we will address two because they were the only issues addressed by the circuit court. We hold that the circuit court correctly determined that Hiegel should have been allowed to present evidence regarding alleged discriminatory hiring practices and that the standards of Title VII of the federal Civil Rights Act may be applied to Hiegel's discrimination-in-hiring claim. We modify the circuit court's determination insofar as it interpreted the Wisconsin Fair Employment Act's prohibition against sex discrimination in compensation as embodying standards broader than those of

the federal Equal Pay Act. We hold that the issue was not before the court.

Hiegel was hired by Servomation, a food-vending company, for office clerical work in October of 1974. The following April she was transferred to a position involving the servicing of vending machines at an increase in hourly wage of twenty cents. Hiegel's title was "location attendant." A "location attendant" is one of two employee classifications at Servomation performing vending machine servicing. The other classification is that of "route service employee." Whether a location attendant or a route service employee is assigned to a particular customer is dependent on the needs and wishes of the customer.

The difference between the two positions lies chiefly in the degree of mobility each has and in the volume of machines serviced. Briefly stated, a route service employee goes to a customer location, loads the machine(s), and moves on to the next location on the scheduled route. A location attendant, on the other hand, provides extra attention to the customer beyond simply restocking the machines. Built into each location attendant's work schedule is what Servomation terms "availability time" during which the attendant might do anything from cleaning up spills to making change.

Servomation's location attendants are represented by the Hotel, Motel, Restaurant Employees' and Bartenders' Union, Local 122 (AFL-CIO). The company's route service employees are represented by the Teamsters, Local 344. The National Labor Relations Board determined in 1967 that route service employees and location attendants did not share the necessary community of interest to justify their inclusion in a single bargaining unit.

In 1977, when the instant suit was filed, Local 344 had twenty-four male and two female route service em-

ployees. In the same year Local 122 had fourteen female and one male full-time location attendants. Local 122 also had eight male part-time location attendants; they were young students who worked on weekends. The negotiated wage rates of route service employees are approximately twice the wage rates of location attendants.

In July of 1977 Hiegel filed a Charge of Discrimination with the Department of Industry, Labor and Human Relations, Equal Rights Division (DILHR). The Charge of Discrimination is a pre-printed standard form used by DILHR in which the complainant alleges the type of discrimination that took place and how it took place. Hiegel alleged sex discrimination in wages by checking boxes marked "Sex" and "Wages" in the portion of the form labeled "CAUSE OF DISCRIMINATION." In the portion of the form allotted for a more detailed explanation of the alleged discriminatory conduct, Hiegel alleged the following:

I began working for the Respondent in October 1974 and am currently employed as a location attendant. I perform essentially the same duties as route service persons who primarily are males but am compensated as a location attendant at nearly half the rate of pay of route service person [sic]. As a women [sic] I believe that I am being discriminated against in violation of Wisconsin Statutes 111.31–111.37 by not receiving equal pay for substantially equal work performed by male employees.

DILHR's Initial Determination, issued in October, 1979, was that there was no probable cause to believe Servomation had discriminated against Hiegel. Hiegel appealed to LIRC and requested a hearing.

The hearing commenced on May 15, 1980, and concluded the next day. Hiegel, represented by counsel, sought to introduce evidence relating to Servomation's hiring practices. For example, Hiegel's attorney tried

to introduce a newspaper advertisement tending to show that Servomation systematically hired females for location attendant positions and males for route service positions. Servomation objected to the evidence on the ground that Hiegel's complaint did not allege discriminatory hiring practices; the hearing examiner agreed and excluded the evidence.

On February 3, 1981, the hearing examiner issued a decision affirming the Initial Determination of no probable cause. The examiner found that the work performed by Hiegel as a location attendant, with respect to any given vending machine, was of a substantially similar nature to the work performed by route service personnel, but that individual route service employees handled a greater volume of machine servicing than Hiegel. The examiner concluded that Hiegel had failed to establish facts and circumstances to warrant a prudent quasi-judicial officer's believing that Hiegel performed work of a similar skill, effort and responsibility in her location attendant position as did her male counterparts in their route service positions.

The examiner stated in his decision that he had examined the case under the standards of the federal Equal Pay Act,[1] Title VII of the Civil Rights Act of 1964,[2] and the Wisconsin Fair Employment Act.[3] The exam-

---

[1] The Equal Pay Act, 29 USC § 206(d), requires equal pay "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ."

[2] Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 USC § 2000e–2(a).

[3] The Wisconsin Fair Employment Act, sec. 111.32(5)(g)1m, Stats. (1979–80), states that "[i]t is discrimination because of sex: . . . [f]or an employer . . . on the basis of sex . . . to discriminate against any individual in promotion, compensation paid

iner also stated that, based on the narrow allegations of Hiegel's complaint, no issue had been raised as to whether Servomation systematically placed females into the lower paying job classification or whether location attendants and route service employees provided work of "comparable worth." Based on his finding that the two positions were not substantially similar, the examiner ordered Hiegel's complaint dismissed.

Hiegel petitioned for circuit court review of LIRC's order. The court issued a decision on December 19, 1983, finding that the exclusion of evidence at the hearing resulted in a fundamentally unfair proceeding and ordering remand of the case for a supplemental hearing. The court also ruled that Hiegel must be allowed to present evidence to establish discrimination under the standards of Title VII. Servomation and LIRC appeal from that order.

The circuit court did not address the issue whether substantial evidence supported LIRC's decision. Accordingly, on this appeal we do not review the evidence. We are reviewing the circuit court's determination that a material error in procedure marred the fairness of the proceedings such that remand was necessary. In reviewing a circuit court order reversing or modifying an order of an administrative agency, an appellate court's scope of review is identical to that of the circuit court. *Boynton Cab Co. v. DILHR*, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). The review must be confined to the record and must separately treat disputed issues of fact, law, and procedure. *See* sec. 227.20(1), (3), Stats. Remand is required where, *inter alia*, the fairness of the procedure has been impaired by a material pro-

for equal or substantially similar work, or in terms, condition or privileges of employment . . ."

cedural error or where the agency erroneously interpreted a provision of law. *See* sec. 227.20 (4), (5), Stats.

Servomation's first argument is that the hearing examiner did not err in excluding evidence of sex discrimination in hiring because the complaint and notice of hearing were limited to allegations of sex discrimination in compensation. Servomation claims its right to due process barred the examiner from admitting evidence on an issue of which Servomation had been given no notice.

A respondent's fundamental right to due process requires that it be apprised of the issues involved in an administrative proceeding. *See Wisconsin Telephone Co. v. DILHR,* 68 Wis. 2d 345, 354–60, 228 N.W.2d 649, 654–57 (1975). *See also* sec. 227.07 (1), Stats. However, while it is true that Servomation received inadequate notice of the discriminatory hiring issue, we agree with the circuit court that it would have been more reasonable for the examiner to allow Hiegel to amend her complaint and to adjourn the hearing for a sufficient period of time to allow Servomation to prepare to meet the proposed evidence. We quote with approval the circuit court's reasoning, as follows:

[Hiegel] filed the complaint without the assistance of an attorney. She was assisted in drafting the language by an employee of the agency. The complaint was filed on a form drafted by the agency. The proceedings in which the issue was raised were not even a final hearing, but only a probable cause hearing. For the agency to take the position that it can participate in the drafting of the complaint, shape the language of the allegations, assist a complainant unschooled in the law and unrepresented by counsel in the preparation of a form complaint supplied by the agency itself, and then turn around and severely limit the scope of the evidence to be considered at a preliminary stage of the proceedings is fundamentally unfair.

Servomation contends the circuit court impermissibly went outside the record, *see* sec. 227.20 (1), Stats., when it rationalized that Hiegel had received agency assistance in drafting her complaint. We disagree. The circuit court was empowered under sec. 902.03 (1) (b), Stats., to take judicial notice of the published DILHR regulations. Wis. Adm. Code sec. Ind 88.02 (5) provides that "[a]ppropriate assistance in completing complaint forms shall be made available by the division." Under sec. 902.01 (2), Stats., the circuit court could also take judicial notice of the "generally known" procedure in which a claimant goes to the DILHR office, tells his or her story to the investigator, and then signs the complaint prepared by the investigator.

Servomation claims Hiegel's allegation of sex discrimination in hiring could not be heard because it was not filed with DILHR until more than 300 days after the alleged discrimination occurred. *See* sec. 111.36 (1), Stats. (1979–80). However, the effective date of that statute was July 1, 1977. *See* ch. 29, Laws of 1977. Prior to that date, the applicable statute of limitations was six years. *See Tucker v. Harley Davidson Motor Co.,* 454 F. Supp. 738, 741–42 (E.D. Wis. 1978). Servomation gave Hiegel the position of location attendant in April, 1975. Since the alleged discriminatory job assignment took place in 1975, Hiegel's complaint, if she had been allowed to amend it in 1980 when the hearing was held, would have been timely filed.

We conclude that the exclusion of evidence regarding sex discrimination in hiring deprived Hiegel of her right to due process. We therefore affirm the circuit court's order remanding the case for a supplemental hearing.

Servomation's next argument concerns the directions given by the circuit court in its remand order and the

court's interpretation of the Wisconsin Fair Employment Act (WFEA). The court ordered that at the supplemental hearing Hiegel "must be allowed to present evidence of sex discrimination in hiring practices or privilege of employment, or any other violation of Title VII standards." Servomation contends that, with respect to the area of compensation, the WFEA is properly construed by reference to the standards developed under the federal Equal Pay Act and that the broader sex discrimination standards under Title VII may not be applied. We conclude that because Hiegel's claim of discrimination in compensation falls squarely under Equal Pay Act standards, the Title VII issue was not before the circuit court and is not before this court. We modify the mandate of the circuit court insofar as it reached the issue whether Hiegel may claim sex discrimination in compensation under the standards of Title VII—standards which may be broad enough to cover a claim grounded in the doctrine of "comparable worth."[4] Hiegel never attempted to introduce evidence bearing

[4] Title VII has been construed to be broader than the Equal Pay Act, permitting proof of discrimination in compensation between two jobs without proving that the jobs are equal or substantially similar. *See County of Washington v. Gunther*, 452 U.S. 161 (1981). *See also Goodrich v. International Brotherhood of Electrical Workers, AFL-CIO*, 712 F.2d 1488, 1490 n 2 (D.C. Cir. 1983). In *Gunther* the United States Supreme Court decided that the claimants' failure to satisfy the equal work standard of the Equal Pay Act did not preclude their proceeding under Title VII. 452 U.S. at 166 n. 8, 181. While the *Gunther* case was not based on the controversial concept of "comparable worth," *id.* at 166, it appears that Servomation fears that applying Title VII standards to the WFEA's prohibition against sex discrimination in compensation could result in interpreting the WFEA as proscribing unequal compensation based on sex for jobs having a comparable worth. The hearing examiner opined in the instant case that Hiegel might have a claim under the comparable worth theory but stated that, as she had not raised the claim, he would not address it.

on comparable worth at the hearing. Hiegel has consistently maintained that as a location attendant she received unequal compensation for work that was substantially similar to the work of route service employees; her claim is therefore not based on any theory of comparable worth but rather on the equal-pay-for-substantially-equal-work concept.

The equal-pay-for-substantially-equal-work concept is clearly embodied in both the WFEA and the federal Equal Pay Act. The WFEA uses the phrase "equal or substantially similar." *See* n. 3, *supra*. The Equal Pay Act employs the phrase "equal skill, effort, and responsibility, and . . . performed under similar working conditions." *See* n. 1, *supra*. While we decline to interpret whether Title VII standards can be applied to the discriminatory compensation proscription of the WFEA, we note that in the specific area of compensation, DILHR and LIRC have not employed Title VII standards but rather have looked for guidance to cases decided under the Equal Pay Act. *See DILHR Decision Digest IV* (1984) at 73. Because Hiegel's claim is rooted firmly within the equal-pay-for-substantially-equal-work standards which, it is well settled, are embodied in the WFEA, there is no reason to decide whether broader standards may apply.

Hiegel may wish, however, to invoke the standards of Title VII in the area of discriminatory hiring or job classification practices. Servomation expressly states in its brief that it does not dispute the application of Title VII to sex discrimination in hiring. We conclude independently that Title VII standards are applicable to cases of sex discrimination in hiring and job classification.

The construction of a statute is a question of law, and a reviewing court is not bound by the administrative agency's interpretation of a statute. *Wisconsin's Envi-*

*ronmental Decade, Inc. v. Public Service Commission,* 105 Wis. 2d 457, 460, 313 N.W.2d 863, 865 (Ct. App. 1981). Because an agency has expertise in interpreting statutes it is called upon to enforce, a reviewing court defers to a certain extent to the agency's interpretation and application of such statutes. *Pigeon v. DILHR,* 109 Wis. 2d 519, 525, 326 N.W.2d 752, 755 (1982). In the specific area of sex discrimination in job placement or classification, however, we have found no agency interpretation of whether the WFEA embraces the standards of Title VII.

Interpretations of Title VII have provided some guidance in applying the WFEA. *See Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 421 n. 6, 280 N.W.2d 142, 149 n. 6 (1979). There is no *"ipso facto* incorporation" of Title VII in the WFEA. *American Motors Corp. v. DILHR,* 101 Wis. 2d 337, 353, 305 N.W.2d 62, 69 (1981).

"[With respect to the order and nature of proof in sex discrimination cases,] the Wisconsin courts generally, and DILHR consistently, have applied the standards developed by the federal courts in Title VII actions." *Decision Digest IV* at 65. The supreme court recently looked to Title VII for guidance in the area of reinstatement and back pay in a sex discrimination case in *Anderson v. LIRC,* 111 Wis. 2d 245, 254, 330 N.W.2d 594, 598–99 (1983).

Both the WFEA and Title VII proscribe discrimination on the basis of sex in the "terms, conditions, or privileges of employment." Title VII has been interpreted by a federal court as prohibiting the systematic setting of wage rates lower for job classifications predominantly held by females than for job classifications predominantly held by males within a particular company, even though the job classifications were not the same. *See International Union of Electrical Workers v. Westinghouse,* 631 F.2d 1094 (3rd Cir. 1980), *cert.*

*denied,* 452 U.S. 967 (1981). *See also Briggs v. City of Madison,* 536 F. Supp. 435 (W.D. Wis. 1982) *(Westinghouse*-type claim made but rebutted with employer's evidence justifying wage disparity). The *Decision Digest IV* reveals that, in six cases between 1973 and 1982, DILHR and/or LIRC have ruled that sex discrimination took place when females were consistently assigned to lower paying or less desirable jobs than males within a company. *Id.* at 69. There can be no question but that the WFEA's prohibition against sex discrimination in the terms, conditions or privileges of employment embraces a claim of systematic discriminatory hiring, job assignment, or job classification. Given the similar language of the WFEA's and Title VII's proscriptions against sex discrimination in the terms, conditions, or privileges of employment, and the dearth of Wisconsin case law interpreting that provision of the WFEA, it is reasonable to look to federal cases under Title VII for guidance on the subject. On remand, the standards developed by federal courts may be applied in determining whether probable cause exists to believe Hiegel was a victim of discriminatory hiring practices by Servomation.

In conclusion, we affirm the circuit court's determination that Hiegel must be afforded a supplementary hearing to present evidence concerning alleged discriminatory hiring or job classification practices under the standards of Title VII. To the extent that the circuit court's decision interpreted the WFEA's prohibition against sex discrimination in compensation as broader than that contained in the Equal Pay Act, we modify the circuit court's decision with the effect that the issue is not reached.

*By the Court.*—Order modified and as modified, affirmed.