William H. MITTON and Suzanne Petru, Plaintiffs-Appellants,

v.

Wisconsin DEPARTMENT OF TRANSPORTATION, Defendant-Respondent-Petitioner.

Supreme Court

*No. 93–0160. Oral argument May 24, 1994.—Decided June 15, 1994.*

(Also reported in 516 N.W.2d 709.)

For the plaintiffs-appellants there was a brief by *Hugh R. Braun, Beth A. Thorson* and *Godfrey, Braun & Hayes,* Milwaukee and oral argument by *Hugh R. Braun.*

For the defendant-respondent-petitioner the cause was argued by *Daniel S. Farwell,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J.   The issue presented in this case is whether the Department of Transportation (DOT) has the authority to condemn 6.26 acres of William H. Mitton's and Suzanne Petru's (Mittons) riverfront property when only 1.26 acres of the land is needed for a highway right-of-way. The DOT contends that because the land is an historic site containing Indian artifacts, it was required under federal law to minimize the effect of the highway construction on the

site. The DOT argues that this could only be accomplished by proposing to purchase the remaining five acres and to preserve it as an historic preservation site.

The court of appeals concluded that the DOT failed to prove that its proposal was the only means by which to minimize the harm to the historic site and obtain federal approval for the highway project. Rather, the court of appeals concluded as a matter of law that the condemnation was for the preservation of an Indian burial site and that the DOT lacked authority to condemn land for this purpose. We agree with the court of appeals that the DOT did not have authority to condemn the extra five acres of land. We hold that because the DOT had no reasonable grounds upon which to justify condemning the extra five acres, it abused its discretion under the statutes in doing so.[1] Accordingly, we affirm.

The facts are undisputed. The DOT is undertaking the construction of a portion of U.S. Highway 29 that will bypass the City of Shawano in Shawano County.

---

[1] Section 84.09, Stats., gives the DOT its authority to condemn land:

> **84.09 Acquisition of lands and interests therein. (1)** The department may acquire by gift, devise, purchase or condemnation any lands for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving and maintaining highways and other transportation related facilities, or interest in lands in and about and along and leading to any or all of the same; and after establishment, layout and completion of such improvements, the department may convey such lands thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such lands so as to protect such public works and improvements and their environs and to preserve the view, appearance, light, air and usefulness of such public works. *Whenever the department deems it necessary to acquire any such lands or interest therein for any transportation related purpose, it shall so order . . . .* (Emphasis added.)

The project is identified as the "Shawano bypass." The highway is part of the federal aid primary highway system and is being constructed with federal financial assistance. The DOT has spent considerable time with state and federal agencies determining which of several alternate routes would be the best highway corridor for the Shawano bypass. Ultimately, the DOT chose the "Revised Near South Alternative" which included a 6.26 acre portion of the Mittons' property along the Wolf River.

During the course of evaluating the alternate routes, the DOT contracted with a company to perform an extensive environmental and archaeological assessment of the alternate land routes under consideration. This research revealed that the "Revised Near South Alternative" would run across an historical and archaeological site called the "Magee-Mitton" site. Because the Magee-Mitton site contains historic and prehistoric Indian artifacts, it has been deemed eligible for inclusion in the National Register of Historic Places. The portion of the site at issue in this case is the portion of the site owned by the Mittons—approximately 6.26 acres of riverfront property.

Under state regulations, the DOT is required to expend federal highway funds in accordance with acts of Congress relating to such federal funds.[2] Under sec. 106 of the National Preservation Act, the DOT is precluded from disturbing historical sites without first seeking approval of federal and state historic preservation agencies and the Federal Highway Administration (FHWA). The FHWA must determine whether the proposed highway project will have an adverse effect upon an historic site. If it will, the FHWA, in conjunction

---

[2] *See* secs. 84.10(15), 84.015 and 84.03, Stats.

with other agencies, must seek ways to avoid or reduce the effects. In addition to federal regulations, state law requires that the DOT negotiate with the State Historic Preservation Officer (SHPO) to reduce any adverse effects on the historic site. *See* sec. 44.40, Stats.

The DOT, after determining that the "Revised Near South Alternative" was the preferred alternative, proposed to the FHWA the following plan to minimize any adverse effects to the Magee-Mitton site: The DOT would acquire from the Mittons a total of 6.26 acres of the Magee-Mitton site (1106 ft. running along the Wolf River). It would use 1.26 acres for the highway right-of-way.[3] From those 1.26 acres, the DOT would extract 10 percent of the Indian artifacts. The remaining 90 percent of the artifacts would be lost, for purposes of archaeological value, due to the construction. In order to mitigate this loss, the DOT would acquire the remaining five acres of the site outside the highway right-of-way, preserving it in trust with permanent covenants, and placing it in the care of a party chosen by the State Historical Society. Information in the record, and the DOT's comments at oral argument suggest that the site may be sold to the Menominee Indian Tribe to be held in trust. The DOT chose this plan after rejecting several alternate proposals, including the proposal to condemn only the land needed for the right-of-way and extracting 100 percent of the artifacts from the land as a means of minimizing adverse effects.

On the basis of the plan proposed, the FHWA determined that the project would have no adverse

---

[3] Counsel for the Mittons informed us at oral argument that because the exact highway right-of-way has not yet been mapped out, 1.26 acres is an approximation. This number is accepted by both parties.

effect on the site because of the DOT's mitigation plan. The FHWA then entered into an agreement with the Advisory Council on Historic Preservation (ACHP), with the concurrence of the DOT and the SHPO. Upon the execution of the agreement, the FHWA gave the DOT approval to proceed with the project.

Upon receiving approval, the DOT advised the Mittons of its intentions to acquire their land. On May 18, 1992, the DOT submitted a jurisdictional offer to the Mittons. Negotiations between the DOT and the Mittons failed, and the DOT commenced condemnation proceedings under sec. 32.05, Stats., to acquire the 6.26 acres of the Magee-Mitton site.[4] On June 9, 1992, the DOT entered an award of damages and title to the land passed to the DOT on that day.

The Mittons commenced this action pursuant to sec. 32.05(5), Stats., challenging the ability of the DOT to condemn the five acres outside the highway right-of-way.[5] Specifically, the Mittons argue that sec. 84.09(1), which grants the DOT authority to acquire land necessary for transportation related purposes, does not authorize the DOT to acquire the extra five acres for preservation purposes. The Mittons do not dispute that the DOT has the authority to acquire the 1.26 acres needed for the highway right-of-way.

---

[4] Section 32.05, Stats., sets forth the procedure for condemning land for transportation related facilities.

[5] Section 32.05(5), Stats., states in relevant part:

(5) Court Action To Contest Right of Condemnation. If an owner desires to contest the right of the condemnor to condemn the property described in the jurisdictional offer, for any reason other than that the amount of compensation offered is inadequate, the owner may within 40 days . . . commence an action in the circuit court of the county wherein the property is located, naming the condemnor as the defendant.

The circuit court granted the DOT's cross-motion for summary judgment and dismissed the Mittons' action. The court ruled that DOT had authority to acquire replacement lands outside the right-of-way to mitigate the effects of the construction on the right-of-way. The court of appeals reversed, holding as a matter of law that DOT was attempting to condemn the Mittons' land outside the right-of-way for the purpose of preserving it as a historic site, an action for which it lacked authority under sec. 84.09(1), Stats. The DOT petitioned and we granted review.

■

The issue we must address is whether the DOT had the authority to condemn the five acres of land outside the right-of-way for the sole purpose of mitigating the effects of construction on the right-of-way. The parties agree that sec. 84.09(1), Stats., gives the DOT authority to condemn land for transportation related purposes. The statute limits that authority, however, to situations in which the DOT "deems it necessary to acquire any such lands or interest therein for any transportation related purpose . . .." In light of this language, we must determine whether DOT correctly exercised its discretion to condemn the land when it deemed that condemnation of land outside the right-of-way was necessary.

The DOT contends that federal law required that it minimize the adverse effects of the construction on the right-of-way and that since condemnation of the land outside the right-of-way was for that purpose, the condemnation was necessary. The Mittons on the other hand, argue that the DOT cannot provide any evidence which would indicate that condemnation was necessary.

744

In reviewing DOT's determination that condemnation was necessary, our review is limited:

> [T]he condemnor is obligated to exercise its judgment such that condemnation is not initiated unless the property sought is reasonably necessary to the accomplishment of a valid public purpose. As a practical matter, the condemnor's invoking the power of eminent domain constitutes an implicit decision that the taking is necessary for a public purpose, and this decision is reviewable in an owner's action under sec. 32.06(5), Stats. The question on such review is whether the condemnor has reasonable ground for the decision to seek condemnation, or whether that decision constituted fraud, bad faith or a gross abuse of discretion. *Falkner v. Northern States Power Co.,* 75 Wis. 2d 116, 135, 248 N.W.2d 885 (1977).

Under this standard of review, our duty is to determine if DOT had reasonable grounds for condemning the extra five acres or if it abused its discretion in doing so.[6]

As grounds for the condemnation, DOT directs us to two federal statutes: 16 U.S.C. § 470f and 49 U.S.C. § 303. Section 470f provides:

**§ 470f.  Effect of Federal undertakings upon property listed in National Register; comment by Advisory Council on Historic Preservation**

The head of any Federal agency having direct or indirect jurisdiction over a proposed Federal or federally assisted undertaking in any State and the head of any Federal department or independent agency having authority to license any undertaking

---

[6] No one contends that the decision constituted fraud or that DOT acted in bad faith.

shall, prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license, as the case may be, take into account the effect of the undertaking on any district, site, building, structure, or object that is included in or eligible for inclusion in the National Register. The head of any such Federal agency shall afford the Advisory Council on Historic Preservation established under title II of the Act [16 USCS §§ 470i et seq.] a reasonable opportunity to comment with regard to such undertaking.

This statute simply requires the FHWA, prior to granting approval of DOT's expenditure of federal funds on the Shawano bypass, to take into account the effect of the construction on the Magee-Mitton site. In addition, the statute requires that the ACHP be allowed to comment on the bypass project. Nothing in this statute requires DOT to take any specific action with regard to the surrounding five acres of land outside the highway right-of-way.

DOT relies on a second statute, 49 U.S.C. § 303 which provides:

### § 303. Policy on lands, wildlife and waterfowl refuges, and historic sites

(a) It is the policy of the United States Government that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites.

(b) The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States, in developing transportation plans and programs that include measures to main-

746

tain or enhance the natural beauty of lands crossed by transportation activities or facilities.

(c)   The Secretary may approve a transportation program or project requiring the use (other than any project for a park road or parkway under section 204 of title 23) of publicly owned land of a public park, recreation area, or wildlife and waterfowl refuge of national, State or local significance, or land of an historic site of national, State, or local significance (as determined by the Federal, State, or local officials having jurisdiction over the park, area, refuge, or site) only if—

(1)   there is no prudent and feasible alternative to using the land; and (2)  the program or project includes all possible planning to minimize harm to the park, recreation area, wildlife and waterfowl refuge, or historic site resulting from the use.

Like § 470f, this statute does not require the DOT to take any specific action to minimize the effects of the bypass. Section (c) of this statute requires only that the DOT, in conjunction with the other agencies, do whatever planning possible to minimize the harm done to the Magee-Mitton site resulting from the Shawano by-pass. Under the broad language of these statutes, the DOT could have been required to simply extract a certain percentage of the artifacts from the right-of-way. The statutes do not require the DOT to condemn land beyond what is needed for the construction project. Therefore, these statutes alone do not provide reasonable grounds for the condemnation.[7] The DOT

[7] The DOT refers to other federal statutes which set forth the process for minimizing adverse effects to historic sites. *See* 23 C.F.R. § 771.135 and 36 C.F.R. §§ 800.1–800.15. These statutes are no more specific than those cited above.

advances no other grounds for the condemnation and we can discern none.

The record indicates that prior to proposing this mitigation plan, the DOT considered alternate plans but in the end proposed only this mitigation plan to the FHWA. The DOT argues that this condemnation plan was the preferred means of complying with federal requirements and that we should conclude that DOT has the discretion to choose which plan is preferable. We agree that under sec. 84.09, Stats., DOT may, in its discretion, develop and adopt plans that are preferred and that comply with federal requirements. The statute, however, does not give them unfettered discretion: "no more property can be taken than the public use requires." *Falkner,* 75 Wis. 2d at 139, *quoting* 26 Am. Jur. 2d, *Eminent Domain,* sec. 133. If we were to allow the DOT action to stand, there would be nothing to stop it from condemning 10 or even 100 acres of land outside the highway right-of-way based upon nothing more than the possibility that it would be denied federal authorization. The DOT cannot, under the statute, simply conclude without some reasonable grounds, that five acres outside the highway right-of-way should be condemned. If it could, there would be no limit to its authority. The federal statutes relied on by the DOT, which do not require them to condemn any land, do not provide reasonable grounds.

Because we find no reasonable grounds for condemning the five acres outside the right-of-way, we hold that the DOT condemned more than the public use requires and abused its discretion under sec. 84.09, Stats., in doing so. Therefore, the jurisdictional offer and the award of damages are invalid. Accordingly, we affirm the court of appeals' decision and remand for

748

further proceedings consistent with this opinion, including determination of costs and disbursements pursuant to sec. 32.28.

*By the Court.*—The decision of the court of appeals is affirmed and cause remanded.