Beverly TATUM, Petitioner-Appellant and
Cross-Respondent,

v.

## LABOR & INDUSTRY REVIEW COMMISSION
(Madison, Wisconsin), Respondent and Cross-
Respondent,

FDL FOODS, INC., Respondent and Cross-
Appellant.

Court of Appeals

*No. 85–1697. Submitted on briefs May 6, 1986.—Decided
July 9, 1986.*

(Also reported in 392 N.W.2d 840.)

412

For the petitioner-appellant and cross-respondent the cause was submitted on the briefs of *Michael T. Sheedy*, with *Techmeier, Sheedy & Associates* of counsel, of Milwaukee.

For respondent and cross-respondent the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, with *Paul Lundsten*, assistant attorney general of counsel, of Madison.

For the respondent and cross-appellant the cause was submitted on the briefs of *Minahan & Peterson, S.C.*, with *Thomas G. Ryan* and *Anne B. Shindell* of counsel, of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

MOSER, P.J.   Beverly Tatum (Tatum) appeals two orders of the trial court dismissing her claims of race and handicap discrimination against her employer, FDL Foods, Inc. (FDL). FDL cross-appeals those parts of the orders denying its request for reasonable attorney fees. Because the trial court correctly held that the Labor and Industry Review Commission's (LIRC) findings were supported by substantial evidence, and because the court correctly declined to award FDL attorney fees for Tatum's arguably frivolous race discrimination claim, we affirm the trial court.

Tatum worked for FDL and its predecessor company from 1978 until 1982. During that time, she had an extensive medical history of chronic paranoid schizophrenia, including auditory hallucinations, for which she was hospitalized several times. In late 1982, Tatum approached her supervisor at FDL and asked him to fire her, telling him that she wanted to go on unemployment compensation. The supervisor refused. Tatum then turned in her supplies and walked off the job.

Consequently, Tatum filed a complaint with the Equal Rights Division of the state Department of Industry, Labor and Human Relations (Department), alleging that FDL discriminated against her on the basis of race[1] and handicap. The Department found no probable cause to believe that FDL discriminated against her. Tatum appealed that decision to a hearing examiner, who dismissed Tatum's claims for her failure to make a *prima facie* case of race or handicap discrimination. At the hearing, Tatum presented no proof on the

---

[1] Tatum is black.

race discrimination claim. The examiner found that Tatum was not discharged and that neither her race nor her mental illness were factors in her termination. The examiner held that Tatum had not pursued her race discrimination claim and that FDL never knew of her handicap. The examiner concluded as a matter of law that FDL did not discriminate against Tatum.

Tatum appealed the examiner's decision to LIRC, which adopted the examiner's findings and conclusions. FDL moved for attorney fees based on Tatum's failure to pursue her race claim. LIRC summarily denied the motion. Tatum then filed a petition to review in the circuit court. The court entered two orders affirming LIRC's decision, determining that LIRC and the examiner correctly found that Tatum failed to make a *prima facie* case of handicap discrimination, and rejecting FDL's counterclaim for reasonable attorney fees. The court did not address Tatum's race discrimination allegation as that claim was not before it. Tatum appeals and FDL cross-appeals the trial court's orders.

■■■

Tatum claims that she proved a *prima facie* case of handicap discrimination. The elements of a *prima facie* case are: (1) the complainant must be handicapped within the meaning of the Wisconsin Fair Employment Act; (2) the complainant must establish that the employer discriminated against the employee because of the handicap; and (3) it must appear that the employer cannot justify its discrimination under sec.

111.34, Stats.[2] Upon judicial review of an administrative agency's findings under ch. 227, Stats., this court will only reverse if the agency's findings are not supported by substantial evidence in the record.[3] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Our review is limited to determining whether the evidence is such that the agency might reasonably make the finding it did.[5] We must search the record to locate substantial evidence supporting the agency's decision.[6] When more than one inference reasonably can be drawn, the agency's finding is conclusive.[7] The reviewing court cannot evaluate the credibility or weight of the evidence.[8]

The disputed issue at the hearing was whether Tatum was fired or whether she voluntarily quit. Tatum was the only witness at the hearing. She testified that she did not think that FDL knew that she had been in a mental institution intermittently while she was employed with them. She stated that she was not sure if she ever told FDL the reason for her frequent absences from work, during which she was treated for mental illness. Tatum admitted that she had great dif-

---

[2] *Boynton Cab Co. v. DILHR,* 96 Wis. 2d 396, 406, 291 N.W.2d 850, 855 (1980) (construing former sec. 111.52(5)(f), Stats. (1975)).

[3] Sec. 227.20(6), Stats.

[4] *Samens v. LIRC,* 117 Wis. 2d 646, 659, 345 N.W.2d 432, 437 (1984) (citation omitted).

[5] *Boynton Cab, supra* note 2, at 405, 291 N.W.2d at 854.

[6] *Vande Zande v. DILHR,* 70 Wis. 2d 1086, 1097, 236 N.W.2d 255, 260 (1975).

[7] *Vocational, Technical & Adult Educ., Dist. No. 13 v. DILHR,* 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977).

[8] *Bucyrus-Erie Co. v. DILHR,* 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979).

ficulty remembering what actually occurred on her last day of work. She testified that she could only remember that she had a headache and went to lay down for some time. She testified that when she came back, her foreman yelled at her and said she was fired. Tatum's counsel attempted to buttress her allegation of dismissal with records from her personnel file. One of those records was a "termination memo" detailing Tatum's actions on her last day. Her attorney argued that the memo was called a "termination memo" because FDL had terminated (fired) Tatum. Tatum also testified that when she was at home the day after her job ended, she "heard" her boss telling her that she was fired.

The examiner rejected Tatum's testimony in its entirety because of its inherent unreliability due to her mental illness. The examiner then held that Tatum was not discharged by FDL. The record of the hearing contains substantial evidence that Tatum was not discharged and that FDL was not aware of her handicap. Tatum's medical records establish that the day after she last worked, Tatum told a Milwaukee Mental Health Complex employee that she did not know if she had been fired or not. These same records establish that Tatum suffered from auditory hallucinations, and that she suffered from relentless auditory hallucinations on her last day of work. She also reported "hearing her boss's voice later, at home, saying she was fired." Tatum's personnel file contained a form which an FDL employee filled out on her last day indicating that Tatum quit. The "termination memo" states that Tatum asked to be fired, that her supervisor refused, and that she walked off the job. Tatum's time sheets

indicate that Tatum was absent from work from March 31 to August 9, 1982. The notations "off all week sick," "under dr's care," and "sick in hosp." appear on the time sheets. Nowhere in the record is there evidence that FDL knew of Tatum's mental handicap. The examiner could properly reject Tatum's testimony of her dismissal as incredible,[9] especially because she suffered from auditory hallucinations which may have led her to believe that she was fired. We hold that substantial evidence supports the examiner's decision. We thus affirm the trial court's order upholding the examiner's decision.

FDL cross-appeals the trial court's rejection of its counterclaim for reasonable attorney fees. FDL first claimed attorney fees before LIRC, arguing that Tatum's failure to pursue or adduce any evidence in support of her race discrimination claim at the hearing meant that the claim was frivolous. At the hearing, as stated by the examiner,

> counsel for the Complainant indicated that the allegation of discrimination on the basis of race had been added to the complaint as a result of his usual practice, when drafting complaints involving allegations of violations of the Wisconsin Fair Employment Act, to add as a routine matter every conceivable basis for discrimination that could be asserted by the Complainant. It was apparent in the course of the discussion that the allegation of race discrimination was not being seriously pursued.[10]

---

[9] See Stacy v. Ashland County Dep't of Pub. Welfare, 39 Wis. 2d 595, 603, 159 N.W.2d 630, 634 (1968).

[10] In the hearing before the examiner, Tatum's counsel said, "The only reason we have race in there is that when I dropped the

LIRC summarily denied FDL's request. On review of LIRC's decision, the trial court affirmed and held that to award FDL attorney fees would be contrary to the intent of the Wisconsin Fair Employment Act. The trial court also held that it lacked subject matter jurisdiction to hear FDL's counterclaim for attorney fees.

■

FDL claims that an award of attorney fees is authorized by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and by sec. 814.025, Stats. We can quickly dispose of the Title VII argument, because this case does not involve a Title VII claim and because the Wisconsin Fair Employment Act (WFEA), secs. 111.31–.395, Stats., does not *ipso facto* incorporate Title VII.[11] We thus reject FDL's request for attorney fees under Title VII.

We must, however, examine sec. 814.025, Stats., to determine whether FDL may recover attorney fees attributable to Tatum's race discrimination claim. That statute reads, in pertinent part,

> (1) *If an action or special proceeding commenced or continued by a plaintiff* or a counterclaim, defense or cross complaint commenced, used or continued by a defendant *is found, at any time during the proceedings or upon judgment, to be frivolous by the court, the court shall award to the successful party*

complaint, a guy walks in, I just put everything down but the kitchen sink."

[11] *Hiegel v. LIRC,* 121 Wis. 2d 205, 216, 359 N.W.2d 405, 411 (Ct.App. 1984) (citation omitted). *See American Motors Corp. v. DILHR,* 101 Wis. 2d 337, 353, 305 N.W.2d 62, 69 (1981) (remedies under Title VII and Wisconsin Fair Employment Act are to be pursued separately).

*costs determined under s. 814.04 and reasonable attorney fees.* [Emphasis added.]

The construction of a statute is a question of law, and a reviewing court is not bound by the administrative agency's interpretation of a statute,[12] especially where this court is as competent as the agency to decide the legal question involved.[13] Had this action originated in the trial court, we would have no difficulty concluding that the court could grant or deny FDL's counterclaim under sec. 814.025, Stats. However, because FDL first claimed attorney fees before LIRC, we must determine whether that administrative agency had the authority to award attorney fees under sec. 814.025.

An administrative agency has only those powers which are expressly conferred or which are fairly implied from the four corners of the statutes under which it operates.[14] Any reasonable doubt as to the existence of an implied power of an administrative agency should be resolved against the exercise of such authority.[15]

Neither ch. 227, Stats., nor the WFEA expressly or impliedly authorizes LIRC to award attorney fees to an employer for frivolous employment discrimination claims brought by an employee. Provisions of the WFEA do not expressly refer to an award of attorney

---

[12] *Hiegel, supra* note 11, at 215, 359 N.W.2d at 410.

[13] *County of Milwaukee v. LIRC,* 113 Wis. 2d 199, 202, 335 N.W.2d 412, 414–15 (Ct.App. 1983).

[14] *Watkins v. LIRC,* 117 Wis. 2d 753, 761, 345 N.W.2d 482, 486 (1984).

[15] *Department of Admin. v. DILHR,* 77 Wis. 2d 126, 136, 252 N.W.2d 353, 357–58 (1977).

fees.[16] Nevertheless, our supreme court has held that under a liberal construction of the WFEA, attorney fees may be awarded to a prevailing *employee* by the Department.[17] This holding was in part based on the twin purposes of the WFEA: to discourage discrimination and to make the complaining employee whole.[18] In making its decision, our supreme court relied on what is now sec. 111.39(4)(c), which states that if the hearing examiner finds the employer to have discriminated, "the examiner shall make written findings and *order such action by the respondent [employer] as will effectuate the purpose of this subchapter."* (Emphasis added).[19]

We note that the following subsection, sec. 111.39(4)(d), Stats., states that "[i]f the examiner finds that the respondent [employer] has not engaged in discrimination . . . as alleged in the complaint, the department shall serve a certified copy of the examiner's findings on the complainant together with an order dismissing the complaint." This section does not allow the agency to order *any* type of relief for a prevailing employer, much less specifically authorize an award of attorney fees. Our decision is supported by our supreme court's pronouncement that only a *court,* as opposed to a court commissioner, is empowered to find frivolous-

---

[16] *Watkins, supra* note 14, at 759, 345 N.W.2d at 485.

[17] *Id.* at 755, 345 N.W.2d at 483–84.

[18] *Id.*

[19] *Id.* at 763–64, 345 N.W.2d at 487 (construing sec. 111.36(3)(b), Stats. (1975)).

ness or assess costs and reasonable attorney fees.[20] We thus decline to infer from the WFEA that LIRC is authorized to award attorney fees to prevailing employers in employment discrimination cases under the WFEA.[21]

We must next consider whether a circuit court may properly make such an award to a prevailing employer when the employee's claim is frivolous. Section 814.025(1), Stats., authorizes a circuit court to award costs and reasonable attorney fees if the court finds at any time during the proceedings that "an action or special proceeding commenced or continued by a plaintiff" is frivolous. The question turns on whether an administrative action reviewed by a circuit court is an "action or special proceeding." We conclude that it is a type of action for which the trial court may properly award attorney fees.

Section 801.01(1), Stats., states that "[p]roceedings in the courts are divided into actions and special proceedings." An action is commenced in the circuit court when a summons and complaint are served and filed

---

[20] *Hessenius v. Schmidt,* 102 Wis. 2d 697, 704, 307 N.W.2d 232, 236 (1981) (emphasis in original).

[21] *See Watkins, supra* note 14, at 766, 345 N.W.2d at 489 (Steinmetz, J., dissenting):

> If legislation has not been adopted to cure all wrongs in an area of employment and human behavior, then the appeal should be to the legislature, not to this court. It must be assumed that the legislature knew that it could grant attorney fees with a favorable award, but chose not to do so.

with the court.[22] Review of LIRC's findings and orders under WFEA is by the circuit court under ch. 227, Stats. [23] In order to obtain review of an administrative decision, an aggrieved party must serve a petition for review on the agency and file it with the circuit court.[24] The petition has the function of a complaint in allowing an aggrieved party to come before the circuit court. The circuit court review of an administrative case is thus analogous to an action originating in the circuit court.

We therefore hold that a circuit court may properly award reasonable attorney fees if it finds that any single claim[25] of the petitioner, was frivolously brought before the court on review under ch. 227, Stats. Because LIRC has no authority to award attorney fees in administrative agency proceedings, we similarly conclude that the trial court cannot award attorney fees incurred at the various agency levels.

We emphasize that the trial court did have subject matter jurisdiction to hear FDL's counterclaim for reasonable attorney fees. In this state, circuit courts have original jurisdiction of all civil and criminal matters within this state and such appellate jurisdiction in the circuit as the legislature prescribes by law.[26] Section 227.20, Stats., governs the trial court's review of admin-

---

[22] Sec. 801.02(1), Stats.

[23] *See* secs. 111.395, 227.15, 227.16 and 227.20, Stats.

[24] Sec. 227.16(1)(a), Stats.

[25] *See Stoll v. Adriansen,* 122 Wis. 2d 503, 511, 362 N.W.2d 182, 187 (Ct.App. 1984).

[26] Wis. Const. art. VII, sec. 8.

istrative actions. Subsection (9) states that "[t]he court's decision shall provide whatever relief is appropriate irrespective of the original form of the petition." We construe these two provisions as granting the trial court the power to hear requests for attorney fees and to grant fees where appropriate. In the instant case, however, the granting of attorney fees would not be appropriate because Tatum jettisoned her arguably frivolous race discrimination claim at the agency hearing stage. FDL therefore incurred no attorney fees on this issue after Tatum petitioned for circuit court review of LIRC's decision.

We thus affirm, for different reasons, the trial court's decision not to award attorney fees.[27] A circuit court can award costs and reasonable attorney fees under sec. 814.025, Stats., only in actions or special proceedings before it. A review of the record indicates that Tatum did not appeal to the circuit court the agency's adverse decision on her race discrimination claim. Tatum thus did not "continue" her race discrimination claim before the circuit court under sec. 814.025. Because Tatum did not pursue her race claim in the circuit court, the court could make no finding as to its frivolousness, and FDL presumably incurred no attorney fees at that level.

In conclusion, we note that if we were to pass on the actions of Tatum's counsel, on this record we would condemn his admittedly "kitchen sink" approach to discrimination complaints. At the hearing before the hearing examiner, Tatum's attorney conceded that he commonly included in such a complaint all conceivable bases for discrimination, whether or not supported by

---

[27] *See State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

425

the facts. Our supreme court has previously condemned such a "shotgun approach,"[28] and we likewise condemn it here. Although a claim is not frivolous *merely* because a party fails to pursue it,[29] the fact that a party brings a claim "assumes and requires an adequate investigation of the facts and the law."[30] However, absent legislative authorization, LIRC had no power to determine frivolousness or to grant FDL attorney fees, and the circuit court could only address the claims before it.

Upon the foregoing reasons, we affirm the trial court.

*By the Court.*—Orders affirmed.

---

[28] *Radlein v. Industrial Fire & Casualty Ins. Co.,* 117 Wis. 2d 605, 630, 345 N.W.2d 874, 887 (1984).

[29] *Stoll, supra* note 25, at 518, 362 N.W.2d at 190.

[30] *Radlein, supra* note 28, at 629, 345 N.W.2d at 886 (citation omitted).