**COURT OF APPEALS
DECISION
DATED AND FILED**

**April 15, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1314**

Cir. Ct. No. 2023CV1893

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

NATURAL LANDSCAPES, INC.,

PETITIONER-APPELLANT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION,

DEFENDANT-RESPONDENT,

STEVEN L. ARMUS,

OTHER PARTY-RESPONDENT.

APPEAL from an order of the circuit court for Waukesha County: MICHAEL J. APRAHAMIAN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Natural Landscapes, Inc., appeals a circuit court order upholding a decision of the Labor and Industry Review Commission ("the Commission").  The Commission determined that Natural Landscapes unlawfully terminated Steven L. Armus's employment based upon Armus's conviction record.  Natural Landscapes argues that the Commission erred because the circumstances of Armus's offenses substantially related to the circumstances of his employment with Natural Landscapes.  *See* WIS. STAT. § 111.335(3)(a)1. (2023-24).[1]  We disagree and affirm the order upholding the Commission's decision.

## BACKGROUND

¶2     The following facts are taken from the evidence introduced at an administrative hearing before an administrative law judge (ALJ) and from the Commission's factual findings.  On appeal, Natural Landscapes does not argue that any of the Commission's factual findings are unsupported by substantial evidence in the record.  *See* WIS. STAT. § 227.57(6).

¶3     Natural Landscapes is a landscaping company that provides prairie and wetland restoration services in Wisconsin.  Keirston Peckham is the owner of Natural Landscapes, which he founded in 2001.  In 2012, Peckham hired Natural Landscapes' first employee, Sheri Lieffring, to handle the business's wetland delineation work.  Between 2015 and 2017, Peckham hired two other part-time workers to assist him with vegetation management on a limited basis.

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

2

¶4 Armus, a physician, became a customer of Natural Landscapes in approximately 2005 or 2006. Armus hired Natural Landscapes to manage and restore a prairie on his property, and Natural Landscapes continued to do work for Armus for approximately nine to ten years. Armus was a prairie enthusiast and often joined Peckham while Peckham was performing work on Armus's property.

¶5 In 2009, Armus was arrested and was charged in state court with drug-related offenses stemming from his buying, selling, and sharing cocaine with a circle of friends who were also users. The Commission found that Armus did not make a profit from selling cocaine. Armus's case was moved to federal court in 2011. Armus then pled guilty to two offenses, pursuant to a plea agreement: conspiracy to distribute cocaine and possession with intent to distribute cocaine. The plea agreement required Armus to act as a confidential informant for law enforcement. Armus's convictions became final on December 11, 2015. As a result of his cooperation with law enforcement, Armus received reduced sentences. Specifically, he was sentenced to time served and was required to pay a $200 assessment.

¶6 Prior to Armus's arrest in 2009, Armus was addicted to cocaine. Shortly after his arrest, Armus entered into a drug rehabilitation program. He successfully completed that program and has not used cocaine since. After completing the program, Armus was placed on a restricted medical license, which required him to undergo random drug testing for five years.

¶7 In April 2015, Armus sold his medical practice to another physician. As a condition of the sale, Armus agreed not to practice medicine in southeast Wisconsin for a period of two years. After his sentencing, Armus's restricted medical license was restored to a full license. In December 2015, however, Armus

lost his license for a period of two years, due to grievances filed by patients whom Armus had reported to law enforcement while acting as an informant. Armus was not eligible to reapply for a medical license until December 2017.

¶8 In March 2015, Armus texted Peckham, stating, in part, "[I]f you are looking for help or other business ideas I am available as I am in forced retirement due to the sale of my business." Peckham immediately replied, "[Y]ou're hired." Peckham hired Armus to assist in the performance of vegetation management work for existing Natural Landscapes customers. Armus's primary duties were weed whacking and herbicide application. Armus was hired to work limited, seasonal hours. Most of his work was to be performed alone, with no supervision, generally in wide-open prairies. Armus would have contact with Natural Landscapes' customers, which included developers, contractors, and municipalities. Peckham hoped that Armus would eventually bring in additional customers, but Armus was hired to perform vegetation management work, and no immediate plans were made for Armus to assume additional duties.

¶9 Armus's first day of work for Natural Landscapes was May 4, 2016. At the end of the day, Peckham asked Armus why he was no longer practicing medicine. Armus responded that he had been addicted to cocaine and was "busted" with $30,000 worth of cocaine, but he had since completed a rehabilitation program and was "clean." Armus told Peckham that he was not in prison because he had worked for law enforcement as an informant. Armus then suggested that Peckham should search online for information about Armus's case.

¶10 That evening, Peckham performed an internet search and learned that Armus had been convicted of possession with intent to distribute cocaine, as opposed to mere cocaine possession. The next morning, Peckham called Armus

and accused him of lying about his conviction history. Armus replied that Peckham had not asked him about his convictions and that he was not required to offer that information. Peckham then told Armus that he could not have Armus working for him anymore.[2]

¶11 Armus subsequently filed an employment discrimination claim against Natural Landscapes with the Equal Rights Division of the Wisconsin Department of Workforce Development. Following an administrative hearing, an ALJ dismissed Armus's claim, concluding Armus had "failed to prove that [Natural Landscapes] discriminated against him on the basis of [his] conviction record, in violation of the [Wisconsin Fair Employment Act (WFEA)]." Specifically, the ALJ concluded that "even though [Armus's] conviction record was a factor in [Natural Landscapes'] decision to terminate him, his conviction record was 'substantially related' to the circumstances of his employment, within the meaning of the WFEA." *See* WIS. STAT. § 111.335(3)(a)1.

¶12 Armus appealed the ALJ's decision to the Commission, which reversed the ALJ's determination that Natural Landscapes did not discriminate against Armus based on his conviction record. Unlike the ALJ, the Commission concluded that Natural Landscapes' "discharge of [Armus] because of his conviction record did not fall within the exception created by" WIS. STAT.

---

[2] At the administrative hearing, Peckham testified that Armus "was not cooperative" in responding to Peckham's questions about Armus's convictions and that Armus ultimately hung up on Peckham. Peckham denied that he "fired" Armus. The Commission found, however, that Peckham did terminate Armus's employment. On appeal, Natural Landscapes does not argue that the Commission's finding in that regard is not supported by substantial evidence in the record. *See* WIS. STAT. § 227.57(6).

§ 111.335(3)(a)1. because Armus's convictions were not "substantially related to his job with" Natural Landscapes.

¶13  Natural Landscapes filed a petition for judicial review of the Commission's decision.  The circuit court affirmed the Commission's decision, and Natural Landscapes now appeals.[3]

## DISCUSSION

¶14  In an employment discrimination appeal, we review the Commission's decision, rather than the decision of the circuit court.  *Cree, Inc. v. LIRC*, 2022 WI 15, ¶13, 400 Wis. 2d 827, 970 N.W.2d 837.  In doing so, we must affirm the Commission's decision unless we find a ground for "setting aside, modifying, remanding or ordering agency action or ancillary relief under a specified provision of [WIS. STAT. § 227.57]."  *See* § 227.57(2).

¶15  Our review of the Commission's factual findings is limited.  If the Commission's decision "depends on any fact found by the [Commission] in a contested case proceeding, the court shall not substitute its judgment for that of the [Commission] as to the weight of the evidence on any disputed finding of fact."

---

[3] We pause here to note three deficiencies regarding Natural Landscapes' appellate briefing.  First, Natural Landscapes' brief-in-chief does not contain a "statement of the issues presented for review and how the trial court decided them," as required by WIS. STAT. RULE 809.19(1)(b).  Second, Natural Landscapes' brief contains no citations to the appellate record, as required by RULE 809.19(1)(d)-(e).  Instead, Natural Landscapes cites generally to document titles and page numbers and then directs us to the locations of those documents in Natural Landscapes' appendix.  An appendix, however, is not the record.  *See United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322.  Third, the table of contents in Natural Landscapes' appendix fails to identify "the circuit court document number" of each document contained therein, as required by RULE 809.19(2)(a).  We caution Natural Landscapes' counsel that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2).

WIS. STAT. § 227.57(6). We will, however, set aside the Commission's decision if the decision "depends on any finding of fact that is not supported by substantial evidence in the record." *Id.* Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tatum v. LIRC*, 132 Wis. 2d 411, 417, 392 N.W.2d 840 (Ct. App. 1986) (citation omitted).

¶16 As for questions of law, we will "set aside or modify" the Commission's decision if the Commission "has erroneously interpreted a provision of law and a correct interpretation compels a particular action." WIS. STAT. § 227.57(5). "Whether the facts of a case fulfill a legal standard is … a matter of law we review de novo." *Cree*, 400 Wis. 2d 827, ¶13.

¶17 "Wisconsin's laws regarding employment discrimination based on conviction record serve two important, and sometimes competing, interests—rehabilitating those convicted of crimes and protecting the public from the risk of criminal recidivism." *Id.*, ¶14. As such, under the WFEA, it is an act of employment discrimination to "terminate from employment … any individual" based on his or her "conviction record."[4] WIS. STAT. §§ 111.321, 111.322(1). However, it is not employment discrimination to terminate an individual from employment because of his or her conviction record if "the individual has been convicted of any felony, misdemeanor, or other offense the circumstances of which substantially relate to the circumstances of the particular job." WIS. STAT. § 111.335(3)(a)1. This exception to the general rule prohibiting employment

---

[4] An individual's "conviction record" includes "information indicating that an individual has been convicted of any felony, misdemeanor or other offense, has been adjudicated delinquent, has been less than honorably discharged, or has been placed on probation, fined, imprisoned, placed on extended supervision or paroled pursuant to any law enforcement or military authority." WIS. STAT. § 111.32(3).

discrimination based on an individual's conviction record is known as the "substantial relationship test." *Cree*, 400 Wis. 2d 827, ¶14. The employer bears the burden of showing that the substantial relationship test has been satisfied in a given case.[5] *Id.*

¶18 "[T]he plain language of the substantial relationship test requires that the employer show that the facts, events, and conditions surrounding the convicted offense materially relate to the facts, events, and conditions surrounding the job." *Id.*, ¶17. "[T]he relevant circumstances of the offense are those material to the likelihood of recidivism in the workplace, such as 'the opportunity for criminal behavior, the reaction to responsibility, or the character traits of the person.'" *Id.*, ¶24. In addition, a court should consider "other relevant and readily ascertainable circumstances of the offense such as the seriousness and number of offenses, how recent the conviction is, and whether there is a pattern of behavior." *Id.*, ¶32. "The recentness of the offenses" is a relevant consideration because "[i]f significant time has passed since a potential employee's last conviction, then that tends to indicate rehabilitation and reduces the likelihood of recidivism." *Id.*, ¶33. Conversely, however, "the existence of convictions with similar elements that predate the most recent conviction undermine[s] an inference of rehabilitation, increasing the recidivism risk." *Id.*

¶19 The substantial relationship test does not require "a detailed inquiry into the facts of the offense and the job." *See Milwaukee County v. LIRC*, 139 Wis. 2d 805, 823-24, 407 N.W.2d 908 (1987). Stated differently, the substantial

---

[5] On appeal, Natural Landscapes does not dispute that it terminated Armus's employment or that the termination was based on Armus's conviction record. The only disputed issue is whether Natural Landscapes failed to satisfy the substantial relationship test.

relationship test does not require an employer to conduct a "full-blown factual hearing" before deciding whether to terminate an employee based on his or her conviction record. *Id.* at 826. An employer should, however, consider the "readily ascertainable circumstances of the offense" that "can be ascertained from the record of conviction itself." *Cree*, 400 Wis. 2d 827, ¶32 & n.16.

¶20 In its written decision in this case, the Commission began by noting that a finding of a substantial relationship "requires a conclusion that a specific job provides an unacceptably high risk of recidivism for a particular employee." *See Milwaukee County*, 139 Wis. 2d at 823 (stating that the WFEA "should be liberally construed to effect its purpose of providing jobs for those who have been convicted of crime and at the same time not forcing employers to assume risks of repeat conduct by those whose conviction records show them to have the 'propensity' to commit similar crimes"). Applying that standard to the instant case, the Commission first considered the "character traits" evidenced by Armus's convictions for conspiracy to distribute cocaine and possession with intent to distribute cocaine. *See Cree*, 400 Wis. 2d 827, ¶24. The Commission stated that "[t]he character traits revealed by these offenses include[] a propensity to unlawfully possess and sell illegal drugs."

¶21 The Commission next considered the circumstances of Armus's employment with Natural Landscapes, noting that Armus "was hired to provide[] vegetation management on prairies and open areas" and "would have worked alone and largely unsupervised." While the Commission acknowledged that "[a] lack of close supervision is one factor to consider in analyzing the opportunity to reoffend," the Commission also observed that "unsupervised work alone cannot form the basis of a finding of substantial relationship." Instead, the Commission stated the burden is on the employer to show "an unreasonable risk that a

9

convicted person, being placed in an employment situation offering temptations or opportunities for criminal activity similar to those present in the crimes for which he [or she] had been previously convicted, will commit another similar crime." *See Milwaukee County*, 139 Wis. 2d at 821.

¶22    The Commission then distinguished this case from its prior decision in *Villarreal v. S.C. Johnson & Son, Inc.*, ERD Case No. CR199903770 (LIRC Dec. 30, 2002), in which the Commission concluded that a complainant's conviction for drug-related crimes was substantially related to the circumstances of a production job at the respondent's facility.    The Commission reasoned that unlike the complainant in *Villarreal*, Armus "would not have had regular interaction with the general public or coworkers" during his employment with Natural Landscapes.    Instead, Armus "would have performed most of his work alone in a prairie," and "[t]he personal contact he would have had would primarily have been with [Natural Landscapes'] customers, who were municipalities, developers, and contractors."

¶23    The Commission conceded that the circumstances of Armus's employment could have presented "the opportunity to engage in illegal conduct if [Armus] were so inclined."    The Commission concluded, however, that the circumstances did not give rise to a "unique[,] enhanced opportunity to reoffend." *See Herdahl v. Wal-Mart Distrib. Ctr.*, ERD Case No. 9500713 (LIRC Feb. 20, 1997) ("[I]n prior cases in which the [C]ommission has found a substantial relationship based upon an individual's opportunity to distribute illegal drugs to others, the [C]ommission has done so only after making an assessment that the circumstances of the job presented a *particular and significant opportunity* for such criminal behavior." (emphasis added)).

¶24    The Commission next noted that other factors relevant to the substantial relationship test include "the seriousness and number of offenses committed by the complainant, how recent the conviction is, and whether there is a pattern of behavior."   Addressing the seriousness and number of Armus's offenses, the Commission observed that Armus had been convicted "of two serious offenses, involving not just use, but also the sale of cocaine." Nevertheless, the Commission found that Armus's actions "primarily involved the sharing of drugs with others in a circle of users who bought and sold to each other" and that Armus "did not have a money-making business enterprise."

¶25    Addressing the recency of Armus's convictions and the existence of a pattern of behavior, the Commission observed that Natural Landscapes "hired, and subsequently fired, [Armus] in 2016, seven years after his arrest."   The Commission noted that "[d]uring those seven years, [Armus] underwent a rehabilitation program, lost his license to practice medicine, worked collaboratively with law enforcement, and underwent random drug testing."   The Commission further found that Armus "has not used cocaine since his 2009 arrest."   Under these circumstances, the Commission found it to be "highly unlikely that [Armus] will commit another similar offense."

¶26    Ultimately, given "[Armus's] low likelihood of reoffending, combined with the fact that the vegetation management position provided no increased opportunity to reoffend," the Commission determined that Armus's convictions were not substantially related to his employment with Natural Landscapes.

¶27    On appeal, Natural Landscapes does not argue that any of the factual findings on which the Commission based the aforementioned determination are

unsupported by substantial evidence. *See* WIS. STAT. § 227.57(6). Given the Commission's factual findings, and the legal standards set forth above, we conclude the Commission properly determined that Natural Landscapes did not meet its burden to show a substantial relationship between the circumstances of Armus's convictions and the circumstances of his employment with Natural Landscapes.

¶28 In arguing to the contrary, Natural Landscapes asserts that the Commission "misapplied the substantial relationship test" by "wrongly assess[ing]" both the circumstances of Armus's convictions and the circumstances of his employment. (Formatting altered.) Regarding the circumstances of Armus's convictions, Natural Landscapes first argues that the Commission erred by "ignor[ing]" Armus's conviction for conspiracy to distribute cocaine. According to Natural Landscapes, the conspiracy conviction "indicates that Armus has a capacity for strategic planning and to participate in a deliberate engagement in activities aimed at achieving a specific, illegal purpose." Natural Landscapes argues that these facts increased the risk that Armus would reoffend during the course of his employment.

¶29 We agree with the Commission that "this gloss adds nothing to the [substantial relationship] analysis." As the Commission correctly recognized in its decision, taken together, Armus's convictions showed that he had a "propensity to unlawfully possess and sell illegal drugs." On appeal, the Commission aptly notes that whether Armus also had a "capacity for strategic planning" is not particularly relevant to the substantial relationship analysis under the circumstances of this case, where there was significant evidence of Armus's rehabilitation and, as discussed below, where Armus's employment did not provide a particular and significant opportunity to reoffend.

¶30 Stated differently, as the circuit court aptly reasoned, while Armus's "strategic and criminal thinking … may materially relate to conditions surrounding other jobs," those characteristics "do not unduly put Natural Landscapes at risk given the nature of the job here essentially working alone with no responsibility over money or credit cards and [Armus's] only contact with customers being limited contact with government employees and large developers." We agree with the Commission that, under these circumstances, "[a]dding the concept of 'strategic planning' into the mix still leaves Natural Landscapes with nothing more than pure speculation that Armus might reoffend while on the job," which is insufficient to meet Natural Landscapes' burden under the substantial relationship test.

¶31 Natural Landscapes also argues that the Commission improperly assessed the circumstances of Armus's convictions by "delving into the specifics of who Armus[] sold drugs to, who he used drugs with, and whether his illegal dealings were profitable." *Cree*, however, states that the application of the substantial relationship test requires consideration of "the facts, events, and conditions surrounding the convicted offense." *Cree*, 400 Wis. 2d 827, ¶17. The facts that the Commission considered regarding the circumstances of Armus's drug use and sales certainly fell within that umbrella. While Natural Landscapes argues that those facts were not "reasonably available" to it at the time of Armus's termination, it does not explain why that was the case. Moreover, the facts that the Commission considered are the same kinds of facts that the *Cree* court considered when discussing the complainant's offenses in that case. *See id.*, ¶¶2, 31. In any event, though, we agree with the Commission that its decision "was sound regardless of the[] additional details" regarding Armus's drug use and sales. Stated differently, even absent consideration of those facts, we would agree with

the Commission's determination that Natural Landscapes failed to meet its burden of proof.

¶32 Natural Landscapes next argues that the Commission "failed to consider the information that was available to and had actually been reviewed by Peckham" prior to Armus's termination—that is, "internet articles" stating that Armus "had allegedly paid for cocaine by drawing on the business account of his former medical practice," "that Armus had set up several of his patients for arrest by selling them cocaine[,] and that Armus had offered sex with one of his staff members to a medical patient if the patient was able to obtain a reliable source of cocaine for him." The problem with this argument is that Natural Landscapes cites no evidence supporting a determination that the allegations in the "internet articles" that Peckham consulted were actually true. In fact, the administrative record contains evidence expressly contradicting the allegation that Armus used money from his medical practice to purchase cocaine. Regardless, we agree with Armus that an employer may not satisfy the substantial relationship test by relying solely on "salacious stories on the internet without fact checking them."

¶33 Natural Landscapes also asserts that the Commission erred when assessing the recency of Armus's convictions by considering the seven-year gap between Armus's *arrest* and the termination of his employment, rather than the six-month gap between Armus's *convictions* and his termination. This argument fails because, under *Cree*, while the date of a complainant's conviction is a factor to be considered in the substantial relationship analysis, so is the "recentness of the offenses." *See Cree*, 400 Wis. 2d 827, ¶33. Furthermore, as noted above, *Cree* states that "[i]f significant time has passed since a potential employee's last conviction, then that tends to indicate rehabilitation and reduces the likelihood of recidivism." *Id.* That principle is equally applicable if significant time has passed

14

since the employee's arrest, particularly in a case involving a significant delay between the employee's arrest and conviction and, as here, a lack of evidence of additional criminal activity by the employee during that time period.

¶34     Natural Landscapes further argues that, in considering the period between Armus's convictions and his termination, the Commission "committed legal error by again delving into facts that are not readily ascertainable and not relevant to the substantial relationship assessment"—namely, that Armus "participated in a rehabilitation program, lost his medical license, cooperated with law enforcement, and underwent random drug testing." Natural Landscapes does not explain, however, why this information was not "readily ascertainable" at the time it terminated Armus's employment. In any event, we note that Peckham specifically testified that Armus told him that Armus had participated in a rehabilitation program, no longer used cocaine, had lost his medical license, and had worked for law enforcement as an informant. Thus, Peckham was aware at the time of Armus's termination of at least some of the information that Natural Landscapes now claims was not "readily ascertainable." In addition, we reject Natural Landscapes' assertion that this information was "not relevant to the substantial relationship assessment," as it clearly related to Armus's rehabilitation and, consequently, to his risk of recidivism.

¶35     As noted above, Natural Landscapes also argues that the Commission erred in its assessment of the circumstances of Armus's employment. First, Natural Landscapes asserts that the Commission "failed to consider the real impact to [Natural Landscapes] of Armus' serious convictions should he reoffend," given that Natural Landscapes' clients "include city and government bodies," which might have canceled their contracts with Natural Landscapes if Armus reoffended while on the job. We agree with the Commission, however,

that "[t]he fact that Armus would be working at times with the government does not support [a conclusion] that he would recidivate," and "[t]o assert otherwise … is just speculation."

¶36 Next, Natural Landscapes emphasizes that Armus's job would have required him to work independently, with little to no supervision. According to Natural Landscapes, this "autonomy" would have "significantly increase[d] [Armus's] freedom to engage in unauthorized activities." As the Commission aptly noted in its decision, however, the fact that Armus's employment would have required him to work mainly alone meant that he would not have been in regular contact with the general public or coworkers, to whom he could have theoretically sold drugs. Under these circumstances, Natural Landscapes' claim that there was a "very real possibility of Armus, himself, arranging drug transactions during work hours" is purely speculative.[6]

¶37 Moreover, we agree with the circuit court's reasoning that

> [t]he fact that Armus would be working alone and unsupervised is not something that materially relates to the conditions of his convictions. It seems that if that were the case[,] any convict guilty of conspiracy or distribution of controlled substances would have an insurmountable obstacle in reentering the work force because if they work with others the argument would be that they are prone to conspire to reoffend and if they work alone they are unsupervised and have the time and opportunity to hatch

---

[6] In arguing to the contrary, Natural Landscapes asserts that the Commission "has consistently held that jobs involving unsupervised duties are substantially related to drug dealing convictions." As Natural Landscapes concedes, however, the Commission's prior decisions are not binding precedent. Moreover, we agree with the Commission, for the reasons explained in its appellate brief, that the decisions cited by Natural Landscapes are materially factually distinguishable from the instant case, in large part because those decisions involved circumstances where the complainants' jobs would have involved regular interactions with either coworkers or members of the public.

16

> new plans to offend. Such convicts could not even aspire to working for the highway department picking up garbage alone along the roadside, a job somewhat similar to the conditions of the job from which Armus was fired.

¶38     Finally, Natural Landscapes argues that the position for which Armus was hired was specifically created for Armus "with the intention of entrusting Armus … with significant responsibilities, client interactions, and eventual access to a company credit card."   (Emphasis omitted.)   Natural Landscapes therefore asserts that the Commission erred by treating Armus's job as a "generic employment opportunity."

¶39     The Commission, however, made factual findings that: (1) Armus was hired "to assist in the performance of vegetation management jobs for existing [Natural Landscapes] customers"; (2) Armus's "primary duties were weed whacking and herbicide application"; and (3) Natural Landscapes "hoped that [Armus] would eventually bring in additional customers, but no immediate plans were made for [Armus] to assume greater duties than the vegetation management that he was hired to perform."   Natural Landscapes does not argue that these factual findings are unsupported by substantial evidence.  *See* WIS. STAT. § 227.57(6).   In light of these findings, we reject Natural Landscapes' argument that the Commission erred by treating Armus's position as a "generic employment opportunity."

¶40     For all of the foregoing reasons, we agree with the Commission that Natural Landscapes failed to meet its burden of showing a substantial relationship between the circumstances of Armus's convictions and the circumstances of his employment with Natural Landscapes.   *See* WIS. STAT. § 111.335(3)(a)1.

17

Accordingly, we affirm the circuit court's order upholding the Commission's decision.[7]

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] In his appellate brief, Armus asks us to affirm the circuit court's order and "remand for further proceedings on lost earnings, attorney's fees, damages, and other remedies, with costs." Armus provides no legal authority in support of this request. The calculation of Armus's damages would have been for the Commission to determine, not the circuit court. As such, we perceive no basis to remand this matter to the circuit court for further proceedings regarding damages, costs, and attorney's fees. We note, however, that Armus is entitled to appellate costs under WIS. STAT. RULE 809.25(1)(a)1.