COURT OF APPEALS
DECISION
DATED AND FILED

January 28, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2024AP2582**

Cir. Ct. No.  **2024CV566**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

CHARNAI SHERRY,

   PETITIONER-APPELLANT,

V.

WISCONSIN LABOR AND INDUSTRY REVIEW COMMISSION,

   RESPONDENT-RESPONDENT,

FROEDTERT SOUTH, INC.,

   INTERESTED PERSON-RESPONDENT.

---

APPEAL from a judgment of the circuit court for Kenosha County: HEATHER R. IVERSON, Judge. *Affirmed*.

Before Gundrum, Grogan, and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Charnai Sherry appeals a circuit court judgment that affirmed the Wisconsin Labor and Industry Review Commission's ("Commission") dismissal of her retaliation complaint against her former employer, Froedtert South, Inc. ("FSI").   On appeal, Sherry argues the Commission failed to consider the complete hearing record and the Commission's decision is contradicted by credible and substantial evidence in the Record.   We affirm.

¶2    Sherry was employed as a physician's assistant at FSI, and she was assigned to the Cardiothoracic Surgery Department.   During the entirety of Sherry's employment, Dr. Mini Sivadasan was FSI's sole cardiothoracic surgeon.   Sherry and Sivadasan's working relationship deteriorated over time, and both complained to FSI's administration about the other.   Additionally, Sherry reported clinical concerns about Sivadasan's patient care.   FSI's chief medical officer determined the clinical concerns were credible and reasonable, and peer reviews of Sivadasan's clinical care followed.

¶3    During the time period of the mutual complaints and the review of Sivadasan's care, Sherry and Sivadasan's working relationship further deteriorated. On June 1, 2018, Sherry emailed FSI's administration, stating she could no longer work with Sivadasan and asked to be transferred to a new department.   That same day, FSI's executive vice president, Susan Ventura, met with Sherry.   Ventura believed Sherry was competent, dedicated, and hard working, and she wanted to retain her.   Ventura offered Sherry an immediate position with another doctor in family care with the same pay and benefits.

¶4  On June 4, 2018, Sherry advised that she was not interested in family care and would prefer a critical care position. Ventura discussed the possibility of Sherry working in pulmonology or assisting Sherry in getting a position with the Infinity Hospital Group, which provided emergency medical services to FSI, or with Dr. Ahuja, who provided neurosurgery services to FSI. Ventura also offered to release Sherry from her employment contract, subject to its noncompete provision. All of these options were included in an email that Ventura sent to Sherry on June 18, 2018. Sherry, however, advised Ventura that she wanted to work in cardiac surgery, and she told Ventura that she was considering three cardiac surgery positions outside of FSI.

¶5  In mid-July 2018, Ventura suggested to Sherry that she could transfer to FSI's oncology group. Ventura told Sherry that if she was interested, Ventura could arrange a meeting with oncology as early as July 18. At this point, there was a miscommunication between Ventura and Sherry. Sherry believed she was meeting with oncology on July 18, and Ventura believed she was waiting for Sherry to confirm if/when she could meet with oncology. Sherry arrived at the oncology clinic on July 18; however, no one knew she was coming or was prepared to meet or talk to her.

¶6  When Ventura learned Sherry had arrived at the oncology department, Ventura immediately called Sherry to apologize for any confusion. Ventura asked Sherry if she would consider transferring to oncology. Sherry responded that she would, but on a short-term, interim basis. Ventura told Sherry that, based on training requirements, Sherry would have to commit to oncology for at least six months to one year. Ventura then asked Sherry what she really wanted to do. Sherry responded that she wanted to work in cardiac surgery. Ventura reminded Sherry that FSI did not have another option to offer in cardiac surgery because Sivadasan

3

was the only cardiac surgeon. Sherry responded that she had been negotiating two cardiac surgery positions in Milwaukee, and that there was one she wanted to take. Ventura reminded Sherry of the noncompete provision, and Sherry advised Ventura that both positions were beyond the mileage restriction. Ventura then told Sherry that if Sherry wanted to leave FSI, Ventura would release her from her contract and Sherry "said that's what she really wanted to do. And [Ventura] wished her well."

¶7 Sherry disputes that Ventura and Sherry mutually agreed to terminate her employment during the July 18 phone call. According to Sherry, Ventura called her on July 18 to apologize for not showing up at the oncology department. Sherry continued, "[T]hen we talked about opportunities. And that was it. And then she never called back to reschedule an appointment with hematology-oncology or anything. And that was the last time I pretty much heard from administration."

¶8 On July 31, 2018, FSI sent Sherry a "Termination of Employment" letter. As relevant, the letter stated, "we are hereby acknowledging our mutual agreement to terminate your employment effective July 27, 2018." The letter also reminded Sherry of her noncompete agreement. The end of the letter contained a note from Ventura that stated: "[Sherry], I am truly sorry that we were not able to offer you an opportunity that you would find acceptable. We wish you well in your future endeavors."

¶9      Sherry filed a retaliation complaint against FSI, pursuant to Wis. Stat. § 146.997 (2023-34).[1]   Following an evidentiary hearing, an administrative law judge ("ALJ") dismissed Sherry's complaint on the basis that Sherry failed to prove by a preponderance of the evidence that FSI disciplined Sherry for reporting quality of care concerns about Sivadasan. *See Acharya v. Carroll*, 152 Wis. 2d 330, 340, 448 N.W.2d 275 (Ct. App. 1989) (To establish a prima facie case of retaliation, a complainant must first show that (1) the complainant engaged in protected conduct; (2) the complainant suffered an adverse action by the employer; and (3) a causal link exists between the protected conduct and the adverse action.).

¶10     Sherry filed a petition for review with the Commission.  After considering the parties' positions and the evidence submitted to the ALJ, the Commission affirmed the ALJ's decision.  Sherry then filed a petition for judicial review in the circuit court, seeking a reversal of the Commission's decision.  The circuit court affirmed the Commission's decision.  Sherry appeals.

¶11     Sherry makes two arguments on appeal.  She first argues that remand is necessary because two exhibits (two emails) from the hearing before the ALJ were inadvertently not included in the Record that the Commission sent to the circuit court.[2]   It is unclear from the Record whether the Commission had these exhibits

---

[1] Wisconsin Stat. § 146.997 generally prohibits health care facilities, providers, and their employees from taking disciplinary action against an employee who in good faith reports that the health care facility, provider, or another employee has violated any state or federal law or any professional standard of clinical or ethical care and poses a potential risk to public health or safety. *See* § 146.997(2)-(3).  Any employee who is subjected to disciplinary action in violation of the protections afforded in § 146.997, may file a complaint with the Equal Rights Division of the Wisconsin Department of Workforce Development. *See* § 146.997(4)(a), Wis. Stat. § 106.54(6).

All references to the Wisconsin Statutes are to the 2023-24 version.

[2] Sherry actually argues three exhibits were not included in the Record that was sent to the circuit court.  However, the Commission correctly points out that one of the three exhibits was included in the Record sent to the circuit court.

and inadvertently failed to transmit them to the circuit court or whether the Commission never received these exhibits from the ALJ.

¶12    In any event, there is a "presumption of regularity in the decisions of administrative agencies." *See Ashleson v. LIRC*, 216 Wis. 2d 23, 34, 573 N.W.2d 554 (Ct. App. 1997).  To justify remand, Sherry must show not just that an exhibit was omitted, but that its omission likely affected the outcome of the case.  *See* WIS. STAT. § 227.57(4), (6); *Responsible Use of Rural & Agr. Land (RURAL) v. Public Serv. Comm'n of Wis.*, 2000 WI 129, ¶48, 239 Wis. 2d 660, 619 N.W.2d 888.  Here, we observe that the ALJ quoted these two emails almost verbatim in her findings of fact, which were adopted by the Commission.  The transcript from the administrative hearing also reveals that the witnesses were questioned on the language in these emails.  As a result, we conclude that even if the Commission did not directly have these two email exhibits before it, the substance of those materials was included in the Record and considered by the Commission.  Remand is unnecessary.  *See id.*

¶13    Sherry next objects to the Commission's factual determinations.  She asserts the Commission's "finding that Sherry did not make protected reports is simply baseless" and "[t]here is no credible evidence Sherry quit."  (Emphasis omitted.)  We disagree.

¶14    First, contrary to Sherry's argument, the Commission explicitly determined that "[Sherry] engaged in conduct that was protected."  Although the Commission determined that some of Sherry's complaints were not protected under WIS. STAT. § 146.997, the Commission's determination on this point did not impact its decision to dismiss Sherry's complaint.  As the Commission explained,

> [E]ven if it were to find that [Sherry] engaged in additional actions that were protected under the statute, this would have no impact on the outcome of the case. The volume or quantity of covered complaints has no bearing on the ultimate finding that [FSI] did not engage [in] any retaliatory behavior as a result.

¶15     We agree with the Commission. Sherry's argument on this point overlooks that her complaint against FSI was dismissed because she failed to prove that FSI retaliated against her for any protected actions. We therefore do not consider whether Sherry made additional complaints about Sivadasan that the Commission should have determined were protected under WIS. STAT. § 146.997. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

¶16     As for Sherry's argument regarding the Commission's determination that she failed to prove FSI retaliated against her, we will uphold an agency's "findings of fact as long as they are supported by substantial evidence in the record." *Kitten v. DWD*, 2002 WI 54, ¶5, 252 Wis. 2d 561, 644 N.W.2d 649; *see also* WIS. STAT. § 227.57(6). "The test is whether, taking into account all of the evidence in the record, 'reasonable minds could arrive at the same conclusion as the agency.'" *Kitten*, 252 Wis. 2d 561, ¶5 (citation omitted). "The findings of an administrative agency do not even need to reflect a preponderance of the evidence as long as the agency's conclusions are reasonable." *Id.* "If the factual findings of the administrative body are reasonable, they will be upheld." *Id.*

¶17     Here, the Commission agreed with the ALJ's finding that FSI "did not force [Sherry] out of her position by terminating her employment." The Commission explained the Record reflected:

> [Sherry] requested a transfer away from Dr. Sivadasan. [FSI] attempted to retain [Sherry] by offering her several transfer options, all of which [Sherry] refused. While

> [Sherry] disputes having agreed to terminate her contract with [FSI] on July 18, 2018, and argues that the decision to terminate her employment was made unilaterally by [FSI], the record is insufficient to support such a finding. Under all the facts and circumstances, the commission finds that [Sherry] failed to show by a preponderance of the evidence that [FSI] violated [WIS. STAT. § 146.997] by forcing her out of her position, or that it took any other disciplinary action against her.

¶18 We conclude the Commission's determination is reasonable and supported by substantial evidence in the Record. The Record establishes that FSI took Sherry's concerns regarding Sivadasan seriously and investigated them. The Record also establishes that Ventura wanted to retain Sherry because she "was a very good employee. She was clinically competent. She's a very hard worker, very dedicated to her work." Ventura offered Sherry multiple transfer options, but Sherry wanted to work in cardiac surgery and Sivadasan was the only cardiac surgeon at FSI. Ventura testified that Sherry told her on July 18, 2018 that Sherry wanted to work in cardiac surgery, there was a position with another employer that she wanted to take, and that she wanted FSI to release her from her contract, which FSI did. Although Sherry advances her version of the July 18 phone call, "When more than one inference reasonably can be drawn [from the evidence], the agency's finding is conclusive." *See Tatum v. LIRC*, 132 Wis. 2d 411, 417, 392 N.W.2d 840 (Ct. App. 1986). We "cannot evaluate the credibility or weight of the evidence." *Id.* Because we conclude the Commission's determination is supported by substantial evidence, we affirm the Commission's decision dismissing Sherry's complaint.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. Rule 809.23(1)(b)5.